**McGuire Law, P.C.**
Eugene Y. Turin (SB # 342413)
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
Email: eturin@mcgpc.com

David L. Gerbie (*pro hac vice*)
Brendan Duffner (*pro hac vice*)
Jordan R. Frysinger (*pro hac vice*)
Donald S. Cuba II (*pro hac vice*)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
Email: dgerbie@mcgpc.com
Email: bduffner@mcgpc.com
Email: jfrysinger@mcgpc.com
Email: dcuba@mcgpc.com

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Daniel M. Hutchinson (SB # 239548)
Anne B. Shaver (SB # 255928)
Amelia H. Haselkorn (SB # 339633)
Alison C. Fraerman (SB # 351981)
275 Battery St., 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000
Email: dhutchinson@lchb.com
Email: ashaver@lchb.com
Email: ahaselkorn@lchb.com
Email: afraerman@lchb.com

Rachel J. Geman (*pro hac vice*)
Sean A. Petterson (*pro hac vice*)
250 Hudson St., 8th Floor
New York, NY 10013
Tel: (212) 355-9500
Email: rgeman@lchb.com
Email: spetterson@lchb.com

*Counsel for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DARIUS H. JAMES, CHARLES KAISER, MARY PILON, and LISE HAINES, individually and on behalf of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CEREBRAS SYSTEMS INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:25-cv-09361-AMO<br><br>**First Amended Complaint**<br><br>**Class Action**<br><br>**Demand for Jury Trial** |

1

FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Darius H. James, Charles Kaiser, Mary Pilon, and Lise Haines (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this first amended class action complaint ("Complaint") against Defendant Cerebras Systems Inc. ("Cerebras" or "Defendant").

**OVERVIEW**

1.    Plaintiffs are authors who spent years conceiving, writing, and pursuing publication of their original works, which are copyrighted material. The United States Constitution recognizes the foundational principle that creators like Plaintiffs are entitled to compensation when others seek to use their copyrighted work.

2.    Defendant Cerebras was founded in 2015 as a hardware company. It originally focused on making "wafer-scale processor chips," an extremely large integrated circuit of chip networks made from a silicon wafer, which provides significant memory and compute power to its customers. It has released three "Wafer Scale Engines,"[1] WSE-1, WSE-2, and WSE-3, that it sells to companies for AI-related purposes, including OpenAI,[2] AWS,[3] Meta,[4] and others.[5]

3.    Cerebras has since expanded to include an AI inference and training platform. Cerebras offers "AI Model Services," which include building custom generative AI models (including LLMs) for customers, and training and fine-tuning existing models for customers' specific needs.

4.    Plaintiffs and Class members own registered copyrights in certain books (the "Infringed Works"). Cerebras infringed Plaintiffs' and Class members' copyrights by taking the Infringed Works without authorization or payment to build its business. Specifically, Cerebras downloaded and/or torrented pirated versions of the Infringed Works, stored them, made copies of

[1] https://www.cerebras.ai/company

[2] https://www.cerebras.ai/blog/openai-partners-with-cerebras-to-bring-high-speed-inference-to-the-mainstream

[3] https://www.cerebras.ai/press-release/awscollaboration

[4] https://www.cerebras.ai/press-release/meta-collaborates-with-cerebras-to-drive-fast-inference-for-developers-in-new-llama-api

[5] https://www.cerebras.ai/customer-spotlights

2

FIRST AMENDED CLASS ACTION COMPLAINT

them, and used them for various purposes including to train a series of large language models called Cerebras-GPT, and to create an Artificial Intelligence dataset named "SlimPajama." Cerebras then contributorily infringed on Plaintiffs' and Class members' copyrights by publishing SlimPajama to the public and facilitating and encouraging third parties to download, copy, store, and use the SlimPajama dataset.

5.    Plaintiffs and Class members never authorized Cerebras to download, copy, store, reproduce, publish, distribute, or otherwise use their copyrighted works for any purpose.

6.    Cerebras's core purpose for reproducing, making available, and distributing Plaintiffs' and Class members' copyrighted works in the SlimPajama dataset and Cerebras-GPT models was to stimulate demand and sales for its revenue-generating AI Model Services and hardware chips.

7.    Plaintiffs bring this action under the Copyright Act to redress the harm caused by Cerebras's copyright infringement.

8.    As described in more detail below, Cerebras directly infringed Plaintiffs' and Class members' copyrights in violation of 17 U.S.C. § 106 by reproducing, making available, and/or distributing the Infringed Works, including to train its Cerebras-GPT models and, separately, to create and distribute the SlimPajama dataset. Cerebras further contributorily infringed Plaintiffs' and Class members' copyrights by publishing SlimPajama and knowingly facilitating and encouraging third parties to download, copy, store, and use the SlimPajama dataset. Cerebras continues to infringe and contributorily infringe Plaintiffs' and Class members' copyrights by continuing to store, copy, use, and encourage third parties to download and use the Infringed Works.

**JURISDICTION AND VENUE**

9.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this case arises under the Copyright Act (17 U.S.C. § 501).

10.    Jurisdiction and venue are proper in this judicial district under 28 U.S.C. § 1391(c)(2) because Cerebras is headquartered in this District. Cerebras created the Cerebras-GPT models here, created and released SlimPajama from this District, and distributes open-source models and datasets

3

FIRST AMENDED CLASS ACTION COMPLAINT

from this District while using them to demonstrate the capabilities of its wafer-scale AI hardware and platform. Therefore, a substantial part of the events giving rise to these claims occurred in this District.

11.    Under Civil Local Rule 3-2(c), assignment of this case to the San Francisco Division is proper because this case pertains to intellectual-property rights, which is a district-wide case category under General Order No. 44, and therefore venue is proper in any courthouse in this District.

**PARTIES**

12.    Plaintiff Darius H. James is an author and performance artist who resides in Connecticut. He owns registered copyrights in multiple books, including *Negrophobia* and *That's Blaxploitation!: Roots of the Baadassss 'Tude,* and two bilingual German publications, *Voodoo Stew* and *Froggie Chocolates' Christmas Eve.*

13.    Plaintiff Charles Kaiser is an author who resides in New York. He owns registered copyrights in multiple books, including *1968 in America: Music, Politics, Chaos, Counterculture, and the Shaping of a Generation* and *The Gay Metropolis: The Landmark History of Gay Life in America.*

14.    Plaintiff Mary Pilon is an author and investigative journalist who resides in California. She owns registered copyrights in multiple books, including *The Monopolists: Obsession, Fury, and the Scandal Behind the World's Favorite Board Game* and *The Kevin Show: An Olympic Athlete's Battle with Mental Illness.*

15.    Plaintiff Lise Haines is an author and professor who resides in Massachusetts. She owns registered copyrights in multiple books, including *When We Disappear: A Novel* and *Girl in the Arena.*

16.    A partial list of Plaintiffs' registered copyrights is attached hereto as <u>Exhibit A</u>.

17.    Defendant Cerebras is a Delaware corporation with its principal place of business at 1237 E Arques Avenue, Sunnyvale, CA 94085.

18.    The unlawful acts alleged against the Defendant in this Complaint were authorized,

4

FIRST AMENDED CLASS ACTION COMPLAINT

ordered, or performed by the Defendant's respective officers, agents, employees, representatives, or shareholders while actively engaged in the management, direction, or control of the Defendant's business or affairs.

19.    Various persons or firms not named as defendants may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

**FACTUAL ALLEGATIONS**

20.    Artificial intelligence ("AI") refers to software engineered to mimic human-like reasoning and inference through algorithmic processes, typically leveraging statistical methods.

21.    Large language models ("LLMs") are AI software programs designed to reply to user prompts with natural-sounding text outputs.

22.    While the traditional computer coding process involves human coders inputting explicit instructions, an LLM is instead trained by processing vast quantities of text data (a "pre-training dataset"), learning statistical patterns and associations within that data, and encoding those relationships into a large set of numbers called weights. Creating this pre-training dataset necessarily involves creating or copying an enormous quantity of textual works.

23.    During pre-training, the LLM copies each textual work in the training dataset (broken down into tokens, or tokenized text) to extract statistical patterns and associations within it. These weights are derived from the protected expression in the training dataset. The model adjusts its weights through optimization techniques to get progressively better at predicting sequences in the data, capturing general linguistic structures and specific expressions. The results of this learning process are encoded in a large set of numbers called "weights" stored within the model. A model's parameters are the learnable values in the model, primarily the model's weights. For instance, one of the Cerebras-GPT series LLMs stores 13 billion parameters.

24.    The goal is to enable the model to reproduce general language patterns, grammar, factual knowledge, and contextual relationships. This results in an LLM that can generate human-like text. Whenever an LLM generates text output in response to a user prompt, it is performing a

5

FIRST AMENDED CLASS ACTION COMPLAINT

probabilistic computation that relies on the stored weights and mimics the protected expression from the training dataset.

25.    Thus, the ability of an LLM to generate human-like textual outputs is directly based on it having ingested large and good quality pre-training datasets, including books. Books, and specifically contemporary fiction (which is copyrighted), are critical components to developing high-performing LLMs.

26.    The Pile is a pre-training dataset assembled by EleutherAI for use in training AI models. In December 2020, EleutherAI introduced this dataset in a paper called "*The Pile: An 800GB Dataset of Diverse Text for Language Modeling*".[6]

27.    This paper describes a component of The Pile called Books3, a known pirated and illegal dataset, as follows:

> Books3 is a dataset of books derived from a copy of the contents of the Bibliotik private tracker … Bibliotik consists of a mix of fiction and nonfiction books and is almost an order of magnitude larger than our next largest book dataset (BookCorpus2). We included Bibliotik because books are invaluable for long-range context modeling research and coherent storytelling.[7]

28.    Before October 2023, Books3 was available for download from Hugging Face (a website dedicated to "a mission to democratize good machine learning") as a standalone dataset.[8] But in October 2023, the Books3 dataset was removed with a message that it "is defunct and no longer accessible due to reported copyright infringement."[9]

29.    Cerebras downloaded and/or torrented, copied, and stored The Pile including Books3. Books3 contained Infringed Works including the copyrighted works of Plaintiffs and Class members. Cerebras used The Pile, including Books3, to develop and train its Cerebras-GPT LLMs, which it released in March 2023.

---

[6] https://arxiv.org/abs/2101.00027

[7] https://arxiv.org/abs/2101.00027

[8] https://huggingface.co/huggingface

[9] https://web.archive.org/web/20231127101818/https:/huggingface.co/datasets/the_pile_books3

6

FIRST AMENDED CLASS ACTION COMPLAINT

30. Cerebras's own published research confirms that its LLMs were pre-trained on The Pile, including Books3. *See Cerebras-GPT: Open Compute-Optimal Language Models Trained on the Cerebras Wafer-Scale Cluster*, § 2.2, at 2-3, https://arxiv.org/pdf/2304.03208 ("we train Cerebras-GPT . . . models . . . on the Pile dataset" . . . and "pre-train models on the Pile dataset, which consists of data from 22 data sources, including . . . Books3").

31. Cerebras also suggested that it uses copyrighted materials obtained from pirated data sources to train its AI models in its April 2026 S-1 Registration Statement to the Securities and Exchange Commission, stating to the SEC: "We may also incorporate third-party data into our AI algorithms or use open-source datasets to train our algorithms. **These datasets may be flawed, insufficient, or contain certain biased information, contain information (including intellectual property and confidential, proprietary, or personal information) for which the third party did not have appropriate rights.**"[10] (emphasis added).

32. Cerebras advertised the release of the Cerebras-GPT models to attract customers to its platform. In the announcement, Cerebras touted that "few organizations train large language models (LLMs) from scratch . . . we were able to train these models in just a few weeks."[11]

33. In May 2023, roughly two months after Cerebras released the Cerebras-GPT models, the models had been downloaded more than 400,000 times.[12]

34. But that is not all that Cerebras did with its library of training data that includes Infringed Works. Cerebras also used it to create, make available, and/or distribute a new LLM training dataset called SlimPajama.

35. In a June 9, 2023 Cerebras publication titled *SlimPajama: A 627B token, cleaned and deduplicated version of RedPajama*, Cerebras announced: "Today we are releasing SlimPajama –

[10] Cerebras Form S-1 at 50, https://www.sec.gov/Archives/edgar/data/2021728/000162828026025762/cerebras-sx1april2026.htm

[11] https://www.cerebras.ai/blog/cerebras-gpt-a-family-of-open-compute-efficient-large-language-models

[12] https://bdtechtalks.com/2023/05/29/open-source-llms-cerebras-gpt/

7

FIRST AMENDED CLASS ACTION COMPLAINT

the largest extensively deduplicated, multi-corpora, open-source dataset for training [LLMs]."[13] It advertised that "SlimPajama offers the highest quality and most compute efficient data to train on for runs up to 627B tokens." *Id*. Cerebras released SlimPajama on Hugging Face, the same website where Books3 had been available prior to it being taken down for copyright concerns.[14]

36.    In that same publication, Cerebras stated that "SlimPajama was created by cleaning and deduplicating the 1.21T token RedPajama dataset from Together [Computer, Inc.]."[15]

37.    RedPajama is an LLM training dataset that contains a copy of Books3.

38.    Cerebras's later research article, *SlimPajama-DC: Understanding Data Combinations for LLM Training*, explains that SlimPajama was constructed by filtering out low-length documents and removing duplicates from the RedPajama dataset, reducing it from 1.2T tokens to 627B tokens.[16]

39.    Importantly, SlimPajama *increased* the books component of RedPajama. Table 1 of SlimPajama-DC identifies "Books" as a component of SlimPajama comprising 4.2% of the dataset, approximately 27B tokens worth, increasing it from the 2.1% that RedPajama was comprised of.[17] In other words, the adjustments that Cerebras made to create SlimPajama from RedPajama doubled the representation of books in the dataset.

40.    The books component that Cerebras retained and increased within SlimPajama included copies and/or deduplicated reproductions of copyrighted books from Books3, including Plaintiffs' and Class members' Infringed Works.

41.    Cerebras's Hugging Face SlimPajama dataset page showed SlimPajama was downloaded 59,153 times as of November 2025, reflecting large-scale third-party acquisition of the dataset.

---

[13] https://www.cerebras.ai/blog/slimpajama-a-627b-token-cleaned-and-deduplicated-version-of-redpajama

[14] *Id*.

[15] https://www.cerebras.ai/blog/slimpajama-a-627b-token-cleaned-and-deduplicated-version-of-redpajama

[16] https://arxiv.org/html/2309.10818v3

[17] *Id*.

FIRST AMENDED CLASS ACTION COMPLAINT

42. By downloading RedPajama and then creating SlimPajama, by storing and reproducing it, by hosting or causing it to be hosted on Hugging Face, by making it available for public download, and by promoting it as an "open-source" dataset for training large language models, Cerebras infringed Plaintiffs' and Class members' copyrights and contributed to third-party infringement of those copyrights.

43. Cerebras had actual and/or, at minimum, red-flag knowledge that the books component of the datasets it copied, used, repackaged, and redistributed contained copyrighted books.

44. Cerebras also had actual and/or, at minimum, red-flag knowledge that third parties would download, copy, retain, and use SlimPajama, including its books component, because it publicly released SlimPajama on Hugging Face under an open license, linked to the dataset and its code from its own materials, and promoted SlimPajama as an open-source training dataset.

45. The source of the Books3 dataset included in the Pile, RedPajama, and SlimPajama is Bibliotik, a so-called "shadow library" website. Shadow libraries are illegal online repositories of books, including copyrighted material. Bibliotik is just one of a number of shadow libraries. On information and belief, Cerebras considered whether to obtain books from other shadow libraries to use as a pre-training dataset for its Cerebras-GPT models and to use in the creation of the SlimPajama dataset. Cerebras also considered whether to obtain books through the use of Common Crawl and/or other web crawlers.

46. Other well-known shadow libraries include Library Genesis (aka LibGen), Z-Library (aka B-ok), Sci-Hub, and Anna's Archive (previously known as "Pirate Library Mirror") (collectively, "Shadow Libraries"). The books and other materials aggregated by these websites have also been available in bulk via torrent systems, such as LibTorrent. Indeed, Bibliotik can only be accessed directly via a torrent system. These Shadow Libraries have long been of interest to the AI-training community because of the large quantity of high-quality contemporary/natural language text (indeed, copyrighted material) they host. They have been repeatedly enjoined by federal courts for copyright infringement in default proceedings, but are notoriously difficult to shut down as many

9

FIRST AMENDED CLASS ACTION COMPLAINT

operate from jurisdictions outside the United States.

47.    Many of the major LLM developers, including OpenAI, Meta, and Anthropic, pirated books from Library Genesis, Z-Library, Sci-Hub, and/or Pirate Library Mirror.[18] The Shadow Libraries themselves have noted that the LLM companies saved them from extinction:

> Not too long ago, "shadow-libraries" were dying. Sci-Hub, the massive illegal archive of academic papers, had stopped taking in new works, due to lawsuits. Z-Library saw its alleged creators arrested on criminal copyright charges . . . Then came AI. Virtually all major companies building LLMs contacted us to train on our data . . . We have given high-speed access to about 30 companies.[19]

48.    As stated above, Cerebras sells dataset curation and AI model development, as well as purpose-built AI training hardware—specifically, its proprietary WSE chip architecture. Cerebras's revenue depends on the customers it can attract to its AI platform and sell its services to, as well as the volume and scale of AI training activity occurring across the industry. The more organizations that train AI models, and the larger the datasets they train on, the greater the demand for Cerebras's hardware.

49.    Cerebras's purpose for releasing the Cerebras-GPT models and the SlimPajama dataset was to attract customers to its platform and increase commercial demand for AI model generation, and thereby simultaneously increase the TAM (total addressable market) for its WSE chips specially designed and optimized for AI training on large volumes of information.

50.    Cerebras was successful in its purpose. Since the release of the Cerebras-GPT models and the SlimPajama dataset, Cerebras has entered into multiple large-revenue partnerships with AI developers and other customers. In January 2026, Cerebras announced a multi-year deal with OpenAI valued at $20 billion, through which OpenAI and Cerebras will co-design models to run on Cerebras hardware. In March 2026, Cerebras entered into a multi-year partnership with Amazon

---

[18] Thomas Heldrup, *Report on Pirated Content Used in the Training of Generative AI*, Rights Alliance for the Creative Industries on the Internet, March 2025, https://rettighedsalliancen.dk/wp-content/uploads/2025/03/Report-on-pirated-content-used-in-training-of-AI.pdf

[19] https://annas-archive.org/blog/ai-copyright/html

10

FIRST AMENDED CLASS ACTION COMPLAINT

Web Services.[20] Cerebras's other partners include Meta[21] and the Mayo Clinic.[22]

51.     Publishing the Cerebras-GPT models and the SlimPajama dataset were not acts of disinterested scientific contribution. They were calculated go-to-market strategies designed to lower the barriers to entry for LLM training, seed the market with a massive, ready-made training corpus, and thereby expand the pool of potential customers for Cerebras's chips. By making Cerebras-GPT and SlimPajama freely available, Cerebras sought to ensure that more companies, researchers, and developers would undertake large-scale AI training—training that would, in turn, require exactly the kind of specialized hardware Cerebras sells.

52.     This strategy is a well-recognized playbook in the technology industry: give away the complement to increase demand for the core product. Here, the complement is foundational LLMs and training data, and the core product is AI training hardware. Cerebras treated Plaintiffs' and Class members' copyrighted works as raw inputs to be strip-mined and repackaged—not because Cerebras needed to understand or engage with those works, but because flooding the market with training data served its commercial interests in attracting customers to its platform and selling more chips. Plaintiffs and Class members never authorized Cerebras to copy, store, reproduce, make available, distribute, publish, or use their copyrighted works in connection with Cerebras-GPT, SlimPajama, or anything else. And Cerebras never paid them a dime for its use of their Infringed Works.

**CLASS ALLEGATIONS**

53.     The "Class Period" as defined in this Complaint begins on at least October 30, 2022 and runs through the present. Because Plaintiffs do not yet know when the unlawful conduct alleged herein began, but believe that the conduct likely began prior to October 30, 2022, Plaintiffs reserve the right to amend the Class Period to comport with the facts and evidence uncovered during further investigation or through discovery.

[20] Cerebras Form S-1 at v.

[21] https://www.cerebras.ai/press-release/meta-collaborates-with-cerebras-to-drive-fast-inference-for-developers-in-new-llama-api

[22] https://www.cerebras.ai/customer-spotlights/mayo-clinic

11

FIRST AMENDED CLASS ACTION COMPLAINT

54.     Plaintiffs seek certification of the following Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3):

All legal or beneficial owners of a United States copyright in any work that was downloaded, copied, stored, or used by Cerebras and/or uploaded, offered, or made accessible to third parties by Cerebras during the Class Period; and that was registered with the United States Copyright Office (a) within five years of the work's first publication and (b) either (i) before being downloaded, copied, stored, used by Cerebras, and/or uploaded, offered, or made accessible to third parties, or (ii) within three months of first publication.

55.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

56.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

57.     Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

58.     The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to Plaintiffs and to all of the other members of the Class. Plaintiffs and the other members of the Class have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

12

FIRST AMENDED CLASS ACTION COMPLAINT

59. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to, the following:

a. Whether Defendant directly infringed the copyrights of Plaintiffs and the Class by copying, storing, processing, reproducing, making available, distributing, and using datasets containing copies of Plaintiffs' Infringed Works, including to train its AI models and create SlimPajama;

b. Whether Defendant knew of and materially contributed to the direct infringement of third parties who downloaded, stored, retained, reproduced, made available, distributed, or copied Infringed Works through the SlimPajama dataset;

c. Whether Defendant's downloading and/or torrenting, copying, storage, and use of Plaintiffs' and the Class's copyrighted works entitles the Plaintiffs and Class members to damages, including statutory damages and the amount of statutory damages; and

d. Whether Defendant's copying of works owned by Plaintiffs and the Class was willful.

**FIRST CAUSE OF ACTION**
**Direct Copyright Infringement**
**17 U.S.C. § 501 *et seq.***
**(On Behalf of Plaintiffs and the Class)**

60. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

61. Plaintiffs, as the owners of the registered copyrights, hold the exclusive rights to those books under 17 U.S.C. § 106.

62. In order to supply enough data for pre-training of the Cerebras-GPT models, Cerebras downloaded and/or torrented, and stored, copies of The Pile, which included Books3. Books3 includes the Plaintiffs' and Class members' copyrighted works. Cerebras made multiple copies of the Books3 dataset (and thus Plaintiffs' and the Class members' copyrighted works) for

13

FIRST AMENDED CLASS ACTION COMPLAINT

pre-training its AI models.

63.     Cerebras also downloaded, copied, and stored the RedPajama dataset from Together Computer, Inc., which contained Books3. Cerebras adjusted the RedPajama dataset to remove low-length works and deduplicate certain content, and created and stored a new LLM training dataset called SlimPajama. SlimPajama contains Plaintiffs' and Class members' Infringed Works. Cerebras released SlimPajama on Hugging Face and encouraged third parties to use it to train LLMs. SlimPajama was downloaded, at a minimum, nearly 60,000 times.

64.     Neither Plaintiffs nor Class members authorized Cerebras to make copies of, make derivative works of, publicly display copies (or derivative works), or distribute copies (or derivative works) of their copyrighted works. The U.S. Copyright Act bestows all the aforementioned rights only on Plaintiffs and the Class members.

65.     By copying, storing, processing, reproducing, making available, distributing, publishing, and using datasets containing copies of Plaintiffs' Infringed Works, Defendant has directly infringed Plaintiffs' and Class members' exclusive rights in their copyrighted works.

66.     Defendant repeatedly copied, stored, made available, published, distributed, and used the Infringed Works without Plaintiffs' and Class members' permission in violation of their exclusive rights under the Copyright Act.

67.     By and through the actions alleged above, Defendant has infringed and will continue to infringe on Plaintiffs' and Class members' copyrights.

68.     Plaintiffs and Class members have been injured by Defendant's acts of direct copyright infringement. Plaintiffs and Class members are entitled to statutory damages, actual damages, restitution of profits, and all appropriate legal and equitable relief.

**SECOND CAUSE OF ACTION**
**Contributory Copyright Infringement**
**17 U.S.C. § 501 *et seq.***
**(On Behalf of Plaintiffs and the Class)**

69.     Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs

14

FIRST AMENDED CLASS ACTION COMPLAINT

as if fully set forth herein.

70.    Unknown third parties directly infringed Plaintiffs' and Class members' copyrights by downloading, copying, storing, retaining, reproducing, making available, distributing, and using SlimPajama, including its books component. Each and every one of these infringements is facilitated, encouraged, and made possible by Defendant.

71.    Defendant had actual and/or red-flag knowledge that the pirated library that it downloaded, copied, stored, duplicated, and republished through the SlimPajama dataset contained copyrighted works.

72.    Defendant had actual and/or red-flag knowledge that third parties were downloading and copying its SlimPajama dataset that it created using the copyrighted works of Plaintiffs and the members of the Class.

73.    Defendant materially contributed to unknown third parties' infringement by, among other things: (a) creating SlimPajama from RedPajama while retaining and increasing the books component; (b) providing SlimPajama to the public for unregulated copying and downloading through Hugging Face and related distribution channels; and (c) promoting and encouraging unknown third parties to copy, download, and use SlimPajama for training large language models.

74.    As of the filing of this Complaint, papers authored in part by Cerebras employees and crediting Cerebras still contain live links encouraging others to download illegally pirated versions of Plaintiffs' copyrighted works, and thousands of additional downloads are still occurring as a result.[23]

75.    Defendant's contribution was substantial and necessary to the scope and persistence of the infringement. Defendant supplied the instrumentality of infringement, invited third parties to use it, and made widespread copying foreseeable and easy. Plaintiffs and the Class members suffered damages, including statutory damages and profits attributable to the infringement. Plaintiffs and the Class members are also entitled to injunctive relief, including requiring Defendant to

---

[23] *See* https://arxiv.org/pdf/2309.10818 at link 2 (last accessed May 11, 2026); https://huggingface.co/datasets/MBZUAI-LLM/SlimPajama-627B-DC

FIRST AMENDED CLASS ACTION COMPLAINT

remove, expire, or lock its live download links containing Plaintiffs' and Class members' Infringed Works.

76.    Defendant is contributorily liable for the direct infringement of others that downloaded and copied Defendant's SlimPajama dataset.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek the following relief against Defendant:

    a.  For an order certifying the Class, naming Plaintiffs as Class Representatives, and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

    b.  For an order declaring that Defendant's conduct violates 17 U.S.C. § 501;

    c.  An award of statutory or compensatory damages at their election, restitution, disgorgement, and any other damages or relief that may be permitted by law or equity under 17 U.S.C. § 504 for violations of the copyrights of Plaintiffs and the Class by Defendant;

    d.  Reasonable attorneys' fees and reimbursement of costs under 17 U.S.C. § 505 or otherwise;

    e.  A declaration that such infringement is willful;

    f.  Permanently enjoining Cerebras from engaging in the infringing conduct alleged herein, including destruction or other reasonable disposition of all copies Defendant made or used in violation of the exclusive rights of Plaintiffs and the Class, under 17 U.S.C. § 503(b);

    g.  Pre- and post-judgment interest on the damages awards to Plaintiffs and the Class, and that such interest be awarded at the highest legal rate from and after the date this Complaint is first served on Defendant;

    h.  Further relief for Plaintiffs and the Class as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

16

## FIRST AMENDED CLASS ACTION COMPLAINT

DATED: May 11, 2026

Respectfully submitted,

*/s/ Jordan R. Frysinger*

**MCGUIRE LAW, P.C.**
Eugene Y. Turin (SB # 342413)
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
Email: eturin@mcgpc.com

David L. Gerbie (*pro hac vice*)
Brendan Duffner (*pro hac vice*)
Jordan R. Frysinger (*pro hac vice*)
Donald S. Cuba II (*pro hac vice*)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
Email: dgerbie@mcgpc.com
Email: bduffner@mcgpc.com
Email: jfrysinger@mcgpc.com
Email: dcuba@mcgpc.com

**Lieff Cabraser Heimann & Bernstein LLP**
Daniel M. Hutchinson (SB # 239548)
Anne B. Shaver (SB # 255928)
Amelia H. Haselkorn (SB # 339633)
Alison C. Fraerman (SB # 351981)
275 Battery St., 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000
Email: dhutchinson@lchb.com
Email: ashaver@lchb.com
Email: ahaselkorn@lchb.com
Email: afraerman@lchb.com

Rachel J. Geman (*pro hac vice*)
Sean A. Petterson (*pro hac vice*)
250 Hudson St., 8th Floor
New York, NY 10013
Tel: (212) 355-9500
Email: rgeman@lchb.com
Email: spetterson@lchb.com
*Counsel for Plaintiffs and the Putative Class*

17

FIRST AMENDED CLASS ACTION COMPLAINT

# EXHIBIT A

Registration Number / Date: TX0003372564 / 1992-08-05

Title: *Negrophobia: an urban parable: a novel* / Darius James.

Copyright Claimant: Darius James

USCO Catalog Link:

https://publicrecords.copyright.gov/detailed-record/voyager_14732620

----------------------------

Registration Number / Date: TX0002449786 / 1988-11-25

Title: *1968 in America: Music, Politics, Chaos, Counterculture, and the Shaping of a Generation*

Copyright Claimant: Charles Kaiser

USCO Catalog Link:

https://publicrecords.copyright.gov/detailed-record/voyager_14281024

----------------------------

Registration Number / Date: TX0004713880 / 1998-01-12

Title: *The Gay Metropolis: 1940-1996*

Copyright Claimant: Charles Kaiser

USCO Catalog Link:

https://publicrecords.copyright.gov/detailed-record/voyager_15460160

----------------------------

Registration Number / Date: TXU001936554 / 2014-08-01

Title: *The Monopolists: Obsession, Fury, and the Scandal Behind the World's Favorite Board Game*

Copyright Claimant: Mary Pilon

USCO Catalog Link:

https://publicrecords.copyright.gov/detailed-record/voyager_27613494

----------------------------

Registration Number / Date: TXU002091758 / 2018-01-25

Title: *The Kevin Show: An Olympic Athlete's Battle with Mental Illness*

Copyright Claimant: Mary Pilon

USCO Catalog Link:

https://publicrecords.copyright.gov/detailed-record/voyager_30022452

----------------------------

Registration Number / Date: TX0007065372 / 2009-12-04

Title: *Girl in the Arena*

Copyright Claimant: Lise Haines

USCO Catalog Link:

https://publicrecords.copyright.gov/detailed-record/voyager_23343561

----------------------------

Registration Number / Date: TX0008649198 / 2018-09-12

Title: *When We Disappear*

Copyright Claimant: Lise Haines

USCO Catalog Link:

https://publicrecords.copyright.gov/detailed-record/voyager_30447975

----------------------------