# EXHIBIT 1

**MCGUIRE LAW, P.C.**
Eugene Y. Turin (SB # 342413)
1089 Willowcreek Road, Suite 200
San Diego, CA 92131
Tel: (312) 893-7002 Ex. 3
Fax: 312-275-7895
Email: eturin@mcgpc.com

David L. Gerbie (*pro hac vice*)
Brendan Duffner (*pro hac vice*)
Jordan R. Frysinger (*pro hac vice*)
Donald S. Cuba II (*pro hac vice*)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
Email: dgerbie@mcgpc.com
Email: bduffner@mcgpc.com
Email: jfrysinger@mcgpc.com
Email: dcuba@mcgpc.com

**LIEFF CABRASER HEIMANN &**
  **BERNSTEIN, LLP**
Daniel M. Hutchinson (SB # 239548)
Anne B. Shaver (SB # 255928)
Amelia H. Haselkorn (SB # 339633)
Alison C. Fraerman (SB # 351981)
275 Battery St., 29th Floor
San Francisco, CA 94111
Tel: (415) 956-1000
Email: dhutchinson@lchb.com
Email: ashaver@lchb.com
Email: ahaselkorn@lchb.com
Email: afraerman@lchb.com

Rachel J. Geman (*pro hac vice*)
Sean A. Petterson (*pro hac vice*)
250 Hudson St., 8th Floor
New York, NY 10013
Tel: (212) 355-9500
Email: rgeman@lchb.com
Email: spetterson@lchb.com

*Counsel for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| DARIUS H. JAMES, CHARLES KAISER, and MARY PILON individually and on behalf of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> CEREBRAS SYSTEMS INC., a Delaware corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 4:25-cv-09361-AMO

**JOINT DECLARATION OF COUNSEL IN SUPPORT OF [PROPOSED] STIPULATION AND ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI") AND HARD COPY DOCUMENTS**

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

JOINT DECLARATION IN SUPPORT OF PROPOSED STIPULATED SUPPORT OF STIPULATION AND ORDER REGARDING THE PRODUCTION OF ESI AND HARD COPY DOCUMENTS
Case No. 4:25-cv-09361-AMO

6247914.v1

We, Sean Petterson and Eric Phung, declare and state that:

1.      I, Sean Petterson, am an attorney admitted to practice before this Court and a partner at Lieff Cabraser Heimann & Bernstein, LLP, counsel for Plaintiffs in this action. I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

2.      I, Eric Phung, am an attorney admitted to practice before this Court and an associate at Keker, Van Nest & Peters LLP, counsel for Defendant in this action. I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

3.      In accordance with Paragraph I.4 of the Standing Order for Civil Cases Before District Judge Araceli Martínez-Olguín, we submit this declaration in support of the Parties' Stipulation and Order Regarding the Production of Electronically Stored Information ("ESI") and Hard Copy Documents ("ESI Order"). We describe the Parties' proposed substantive modifications to the District Court's Model Stipulated Order Re: Discovery of Electronically Stored Information ("Model Order"). The Parties' proposed ESI Order is filed herewith. A redline version comparing the Parties' proposed ESI Order to the Model Order is attached as Exhibit 2.[1]

4.      The Parties added introductory language making explicit their stipulation that the ESI Order will govern both production of electronically stored information and hard copy documents, that the ESI Order is based on the Model Order, and identifying this declaration and the redline comparison of the ESI Order and Model Order for ease of reference.

5.      **Section I (Definitions).** The Parties added a "Definitions" section encompassing commonly used terms within the ESI Order.

6.      **Section II (Purpose).** In this Section, the Parties added language to the Model Order's Section 1 to make explicit that the ESI Order governs production of both ESI and Hard

---

[1] In accordance with the Court's Civil Standing Order, the Parties do not identify the changes that constitute the addition of case-identifying information or the elimination or alteration of language denoted as optional. The Parties also do not address changes or modifications related to the capitalization of terms, internal references within the document, or where text has been re-ordered in a manner that does not substantively affect the section in which it is contained.

Copy Documents. The Parties also made explicit the implied contours of the ESI Order, specifically that "[n]othing in this Order is intended to expand or limit the scope of discoverable information or the Parties' obligations under the Federal Rules of Civil Procedure," and that "disputes arising out of the production of Documents subject to this Order shall be resolved according to Federal Rules of Civil Procedure, Local Rule 26, and the Court's Standing Orders."

7.      Also in Section II, the parties agreed to negotiate a separate protocol regarding source code, and therefore specified that the ESI Order will not govern the inspection and production of source code. Rather, the Parties' stipulated Protective Order will govern the inspection and production of source code.

8.      **Section IV (Liaison).** The Parties modified this Section to indicate that the Parties have not yet, but will identify discovery liaisons in accordance with Section 3 of the Model Order.

9.      **Section V (Preservation of ESI).** The Parties modified and expanded the Preservation Section to add language on the Parties' obligations with respect to preservation of ESI and inaccessible ESI. The Parties separated this Section into V.A (Preservation Obligations) and V.B (ESI Not Reasonably Accessible).

a.      Section V.A. addresses the Parties' preservation obligations consistent with the Model Order Section 4 and 4(b)-(c). The Parties modified the language of Section 4 to reflect that, while they have not yet exchanged a list of ESI that will be preserved, they agree to do so. In this Section, the Parties added expanded language reflecting the principle stated in the Model Order that preservation will be "reasonable and proportionate," and agreed that the Parties "shall have a continuing obligation to take reasonable and proportional steps to identify and preserve custodial and non-custodial data sources or custodians as reasonably necessary," making further explicit the obligations outlined in the Model Order. For avoidance of doubt, the Parties added language stating that "[b]y preserving information for the purposes of this Litigation, the Parties are not conceding that such material is discoverable." The Parties further modified the language of the Model Order to reflect that they "agree to exchange" a list of ESI to be preserved, but have not yet done so. Such an exchange will be consistent with the requirements of Section 4(b) of the

JOINT DECLARATION IN SUPPORT OF STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ESI AND HARD COPY DOCUMENTS
Case No. 4:25-cv-09361-AMO

Model Order, though the Parties further specified, for, avoidance of doubt, that the list(s) exchanged shall include both custodial and non-custodial sources. Finally, the Parties removed the Model Order's time limitation (Model Order Section 4(a)) on preservation of ESI, and will instead follow principles of reasonableness and proportionality in preservation.

b.     Section V.B (ESI Not Reasonably Accessible) reflects the Parties' agreement, consistent with Model Order Sections (4)(d)–(f) to retain, but not search, review, or produce, data from certain identified sources, and to not preserve data from other sources. Also in this section, the Parties added language describing each Parties' obligations with respect to inaccessible data in order to ensure transparency, reduce burden, and promote cooperation with regard to the identification of inaccessible data. This includes provisions that (1) a Responding Party (the Party producing documents or ESI) that is aware of inaccessible data likely to contain unique, discoverable ESI, will identify its source; (2) inaccessible data will not be produced except by Court order, and (3) the Parties will meet and confer as to "whether there are reasonable and practical methodologies to query or sample" inaccessible data sources. Finally, the Parties added a statement clarifying that "preservation of Documents does not prohibit their continued use in the ordinary course of business," and contemplated the effect of this continued use on production of metadata. To that end, the Parties included language acknowledging that certain metadata fields may change between the date of preservation and the date of collection, and barring any adverse inference solely from the fact that a document's metadata reflects activity occurring after preservation.

10.     **Section VI (Identification of ESI).** The Parties added this Section to facilitate efficient, cooperative discovery through the Parties' prompt disclosure and conferral on the custodians and data sources from which responsive information will be collected.

a.     Section VI.1 requires the disclosure of custodians and the location and descriptions of custodial and non-custodial data sources and delineates timing of the disclosures.

b.     Section VI.2 requires the Parties to meet-and-confer regarding additional custodians identified by the Requesting Party and provides a 21-day timeline for the Parties to

3

JOINT DECLARATION IN SUPPORT OF STIPULATION AND ORDER REGARDING THE PRODUCTION OF ESI AND HARD COPY DOCUMENTS
Case No. 4:25-cv-09361-AMO

agree on additional custodians.

c.  Section VI.3 provides that the Parties may, upon request of the Requesting Party, meet and confer to agree upon custodians, data sources, the identity and sources of ESI to be produced without the use of technology-assisted review ("TAR") or search terms, the timeframe for collection and review of documents, and prioritization of categories of documents and ESI to be collected.

11.  **Section VII (Search and Review).** The Parties replaced Model Order Section 5 (Search) with this Section, which identifies and describes processes and methodologies for the search and review of ESI and conferral on the same, including the disclosure of techniques to be used.

a.  Section VII.1 adds language making explicit the implicit principle that a Responding Party (the Party producing documents or ESI) is best situated to determine search and review methods. Section VII.1 further clarifies that "[n]othing in this ESI Protocol alters a Responding Party's obligation to conduct a reasonable inquiry or use a reasonable process in searching for and producing relevant information, nor does it alter a Requesting Party's right to challenge a deficient production."

b.  Section VII.2 requires the Parties to meet and confer to discuss the use of search terms or the use of advanced search and retrieval technologies. This Section also requires that the Responding Party shall, within a reasonable time period, specify the technique or techniques it will use to search for and cull material it reasonably anticipates to be responsive. The Section provides a mechanism for the Parties to meet and confer on any objection to the specified technique and to submit a dispute to the Court if necessary.

c.  Section VII.3 provides that, if a Responding Party is using search terms to cull or identify responsive ESI, it will describe a Search Protocol consistent with this District's ESI Guideline 2.02(f) and Section V of this District's Checklist for Rule 26(f) Meet and Confers Regarding ESI. This Section further provides that the Search Protocol shall include proposed search terms and the universe of documents on which they are to be applied. It sets a limit of 20

search terms per custodian per party. This Section further contemplates that the proposal, tailoring, and application of search terms is an iterative process, during which Parties may meet and confer to revise search terms and search term limits, and the Requesting Party may suggest terms. If requests for additional search terms are contested, the Parties may bring a dispute to the Court. Finally, this Section explains that certain "indiscriminate" terms, as defined in the Section, standing alone, are inappropriate, and that disjunctive combinations of words or phrases, as defined in the Section, may count as separate search terms toward the 20-term limit.

d.      Section VII.4 sets forth a procedure for validation of search terms consistent with Section V of this District's Checklist for Rule 26(f) Meet and Confers Regarding ESI. This Section requires a Responding Party to, as part of a Search Protocol, provide hit-count reports and review a "Null Set" of documents to assess search terms. This Section further provides that the Parties will collaborate to revisit ineffective search terms and meet and confer on the Search Protocol generally, raising any disputes to the Court.

e.      Section VII.5 explains that a Producing Party may perform a responsive review of documents captured by search terms and that a Producing Party is not required to produce documents captured by search terms that it deems, in good faith, not responsive.

f.      Section VII.6 provides for additional disclosure and validation requirements for a Responding Party that uses search terms in combination with TAR (defined as "layering") on the same set of documents. This Section requires the Parties to meet and confer to negotiate a layering protocol and a method for assessing hits when review is and is not layered on the set of documents at issue.

g.      Section VII.7 requires a Party intending to use TAR to disclose a TAR Protocol in advance of the application of TAR, and references the Parties' Proposed Appendix 3, which sets forth the minimum requirements for such a Protocol.

h.      Section VII.8 defines "AI Responsiveness Review," an artificial-intelligence assisted means of identifying responsive or privileged documents, and requires that a Responding Party electing such review disclose it in advance.

i.      Section VII.9 provides that a Responding Party using AI Responsiveness Review will provide an AI Review Protocol, and references the Parties' Proposed Appendix 4, which sets forth the minimum requirements for such a Protocol.

j.      The final paragraphs of Section VII make explicit the Parties' obligations under the Federal Rules of Civil Procedure to ensure accurate and complete productions. These paragraphs explain that the Parties must produce documents or ESI known to be responsive to a discovery request regardless of whether such documents or ESI are captured by any search methodology described or developed in accordance with the proposed ESI Order. The Parties further agreed on language requiring them to use reasonable efforts to identify and review potentially responsive documents for which text-based search technologies are ineffective (e.g., image files).

12.     **Section VIII (Production Formats).** This Section replaces the Model Order's Section 6 with language referencing the Parties' proposed Appendices 1 and 2, which set forth technical specifications for ESI and document productions and delineate the metadata data fields to be produced with ESI.

13.     The Parties removed the Model Order's Section 7 (Phasing). Pursuant to Section VI.3, the Parties will meet and confer on the timing of document productions and prioritization of requests as necessary.

14.     **Section IX (Privileged Documents and Privilege Log).** The Parties added this Section to clarify their obligations with respect to the production and logging of privileged documents. This Section requires the Parties to log responsive documents or portions thereof that are withheld or redacted on the basis of a recognized protection or privilege, such as the attorney-client communication privilege or work product doctrine. Subsections (a)–(j) set forth the requirements for privilege logging, including the information to be included on a privilege log. Consistent with Model Order Section 8(c), which the Parties otherwise removed, Section IX delineates privileged material that the Parties need not identify on a log, specifically communications regarding this action and involving outside counsel, and attorney work product

6

JOINT DECLARATION IN SUPPORT OF STIPULATION AND ORDER REGARDING THE PRODUCTION OF ESI AND HARD COPY DOCUMENTS
Case No. 4:25-cv-09361-AMO

created regarding this action.

15.     **Section X (Inadvertent Production of Privileged Material).** The Parties modified Model Order Section 8 (Documents Protected from Discovery) and renamed it as Inadvertent Production of Privileged Material. The Parties retained Model Order Section 8(a) and added a reference to Federal Rule of Evidence 502(e), which provides that the Parties' agreement on inadvertent production is binding. The Parties agreed on additional language that "[a] party or non-party that asserts that it inadvertently produced privileged or protected documents shall not be required to provide discovery on its internal procedures for conducting privilege reviews prior to production, and it shall not be required to demonstrate that such procedures were sufficiently rigorous." The Parties removed Model Order Section 8(b) to reflect that they have not agreed to a "quick peek" process. Instead, the Parties have agreed to the clawback procedure identified in Section 12 of the Parties' Proposed Protective Order.

16.     **Section XI (Miscellaneous Provisions).** The Parties added this Section to address foreseeable production issues and specifications not otherwise included in the ESI Order or Model Order.

a.     Section XI.A makes explicit that, by stipulating to the ESI Order, the Parties do not waive protections over privileged materials or other objections as to production, discoverability, authenticity, admissibility, or confidentiality of documents or ESI.

b.     Section XI.B allows the Parties to negotiate variances to the provisions in the ESI Order where necessary to facilitate timely and economical productions, and provides that "[n]o Party shall unreasonably object to any such variance." The Parties shall agree in writing to any such variance.

c.     Section XI.C requires the Parties to make "reasonable efforts" to preserve hard copy documents for which production may introduce legibility issues. This Section further provides that a Party may access these hard copy documents by requesting to inspect them, and such a "request shall not be unreasonably denied."

d.     Section XI.D addresses the preservation of and provides specifications for

JOINT DECLARATION IN SUPPORT OF STIPULATION AND ORDER REGARDING THE PRODUCTION OF ESI AND HARD COPY DOCUMENTS
Case No. 4:25-cv-09361-AMO

the production of short message data. This Section requires the Parties to meet and confer to address production if electronic messages cannot be produced in a reasonably useable format.

e. Section XI.E sets forth specifications for the production of hyperlinked documents in otherwise produced material, and provides for a procedure through which a Party may request up to 100 hyperlinks. Should the Parties dispute the appropriateness of producing any hyperlinked documents, or otherwise seek to increase the cap on hyperlink productions, this Section requires that the Parties meet and confer in good faith to resolve such disputes.

f. Section XI.F provides that, for the sake of efficiency and burden reduction, the Parties may use "email threading" for internal review. However, this Section further specifies that an email's inclusion in a more inclusive email thread is not reason to withhold the email from production.

g. Section XI.G addresses the production of documents stored on collaboration and document management tools, specifying that a Responding Party will produce the "latest in time" version of these documents in the first instance, and that the Parties will meet and confer as to reasonable requests to produce prior versions of documents. The Section otherwise provides that the Responding Party will preserve version history and audit log metadata for these documents, to produce upon reasonable request.

h. Section XI.H explains the Parties' obligations with regard to subpoenaing Non-Parties. This Section provides that a Non-Party shall produce documents to all Parties in the first instance, and otherwise requires the Party issuing the subpoena to ensure Non-Party documents are produced to the other Party within 14 days if the Non-Party does not produce the documents to the other Parties.

i. Section XI.I clarifies the Parties' obligations with respect to ESI that once existed but is now lost, destroyed, or irretrievable, and includes requirements for the Responding Party's disclosure as to such ESI.

17. **Appendix 1 (Production Delivery Requirements).** The Parties added this Appendix, which is incorporated by reference into Section VIII. This Appendix describes

technical specifications for the production, logging, and confidentiality designation of hard copy documents and ESI.

18.    **Appendix 2 (ESI Metadata and Coding Fields).** The Parties added this Appendix, which is incorporated by reference into Section VIII. This Appendix describes the metadata fields to be produced with all ESI. The Appendix further provides that the Parties will discuss any ambiguity about the inclusion of metadata fields prior to processing the ESI for production.

19.    **Appendix 3 (TAR Protocol Requirements).** The Parties added this Appendix, which is incorporated by reference into Section VII.7. This Appendix specifies the minimum disclosure requirements for a Party electing to use TAR. Appendix 3 requires disclosure of the application or software used, the criteria used to select the TAR universe, a description of the training of the TAR model, TAR review methodology and review oversight, and validation and elusion testing of the TAR system, among other information. The Appendix further provides that a Party using TAR will disclose the protocol prior to application, allowing the Parties to meet and confer on any concerns.

20.    **Appendix 4 (AI Protocol Requirements).** The Parties added this Appendix, which is incorporated by reference into Section VII.9. This Appendix specifies the minimum disclosure requirements for a Party electing to use AI Responsiveness Review. Appendix 4 requires disclosure of the AI model or system used, the criteria used to select the AI review universe, a description of the training of the AI system, AI review methodology and review oversight, and validation and null-set testing of the AI system, among other information. The Appendix further provides that AI processing shall occur within a secure review environment, and no document content may be exported from that environment without the express agreement of the Parties, in writing. Finally, the Appendix requires that a Party using AI Responsiveness Review shall retain, and upon reasonable request, provide audit materials explaining the AI workflow to the other Party.

21.    The Parties have met and conferred and reached agreement to make the changes

9

to the Model Order in this action.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on June 29, 2026 in San Francisco, California and New York, New York.

Dated: June 29, 2026

/s/ Sean A. Petterson                                /s/ Eric Phung
Counsel for Plaintiffs                                Counsel for Defendant

JOINT DECLARATION IN SUPPORT OF STIPULATION AND ORDER REGARDING THE
PRODUCTION OF ESI AND HARD COPY DOCUMENTS
Case No. 4:25-cv-09361-AMO